

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 26, 2023

**BY ECF**
The Honorable Ronnie Abrams
United States District Judge
40 Foley Street
New York, NY 10007

Re:    ***United States v. Charles Guy*, 23 Cr. 49 (RA)**

Dear Judge Abrams:

On June 28, 2023, defendant Charles Guy, a/k/a "Billy Guy," will appear for sentencing after having been convicted of his third serious narcotics offense. For the reasons set forth below, the Government submits that a substantial sentence of imprisonment within the United States Sentencing Guidelines range of 87 to 108 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

I.    **Background**

On or about November 1, 2022, law enforcement agents (the "Agents") were conducting surveillance of a known narcotics dealer and money launderer JAMES HERNANDEZ ("HERNANDEZ"). While conducting surveillance, the Agents observed HERNANDEZ driving a 2021 Jeep Grand Cherokee (the "Jeep"). At approximately 6:49 p.m., HERNANDEZ parked the Jeep in the vicinity of 2130 White Plains Rd. Bronx, NY, where an individual later identified as CHARLES GUY, a/k/a "Billy Guy," ("GUY") entered the front passenger seat of the Jeep. GUY remained in the Jeep for approximately two to three minutes before exiting the Jeep with a visible brick shaped bulge in his pants. GUY then entered the front passenger seat of a white Toyota 4Runner, bearing a particular North Carolina license plate (the "4Runner"). The Agents followed the 4Runner as it departed the vicinity of 2130 White Plains Rd. Bronx, New York and followed it to a gas station in the vicinity of 2090 Bronxdale Ave. Bronx, New York (the "Gas Station"). Once at the Gas Station, the Agents conducting surveillance saw a third individual ("CC-1") enter the rear passenger seat of the 4Runner.

After observing CC-1 enter the 4Runner, the Agents approached the vehicle. While engaging with the driver of the 4Runner ("CC-2"), one of the Agents ("Agent-1") observed what appeared to be a brick of a white substance on the backseat of the 4Runner, partially obscured by a backpack. The Agents ordered the occupants of the 4Runner to exit the 4Runner while the Agents conducted a search of the vehicle and recovered a brick of white substance wrapped in plastic and emblazoned with a distinct stamp (the "Brick"), as well a white substance wrapped in

a purple latex glove. Stamps like that on the below-depicted brick are typically affixed by narcotics traffickers as a way to "brand" their product.  A photograph of the brick is included below.



## II.     <u>The Guilty Plea, the Guidelines Calculation, and the Defendant's Criminal History</u>

On January 30, 2023, the defendant waived indictment and pleaded guilty to a one-count information charging him with fentanyl trafficking. The plea agreement contained a Guidelines stipulation that the defendant is at offense level 27 and criminal history category III, leading to a stipulated Guidelines range of 87 to 108 months' imprisonment (the "Stipulated Guidelines Range"). Because the defendant was permitted to plead to a lesser-included offense in violation of 21 U.S.C. § 841(b)(1)(B), his sentence carries a mandatory minimum term of 60 months' imprisonment.

In its Presentence Investigation Report, the Probation office reached the same Guidelines calculation as the parties. Probation has recommended the Court impose a Guidelines sentence of 96 months' incarceration, to be followed by four years' supervised release.

The defendant has four prior criminal convictions — only one of which results in criminal history points. The defendant sustained his first criminal conviction in 1986 when he was 18 years old, when he was convicted of armed robbery. For this conviction, the defendant received a five-year term of probation. In the same year, the defendant was adjudicated guilty for disorderly conduct.

Four years later, and before his prior term of probation expired, the defendant was convicted in state court in Baltimore, Maryland, of multiple narcotics offenses, including, among other things, conspiracies to distribute cocaine and heroin. In connection with this offense, the

defendant received concurrent 240-month incarceratory sentences. He was released from imprisonment in 2002. Due to the age of this conviction, this offense does not result in any criminal history points.

No later than approximately seven years later, in 2009, the defendant was again engaged in heroin distribution. In 2011 he was arrested and charged federally, in the District of Maryland, with conspiracy to distribute and possess with intent to distribute heroin. In connection with this offense, he was sentenced to 151 months' imprisonment to be followed by a term of supervised release. At the time of the instant offense, he was serving the term of supervised release imposed in the District of Maryland case.

## III.    Discussion

The Government respectfully submits that given the nature and circumstances of the offense, the defendant's criminal history, and the need for the sentence imposed to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, a substantial sentence of imprisonment, including the Guidelines sentence of 96 months' incarceration recommended by Probation, would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case.

It goes without saying that the defendant's conduct is serious and deserves serious punishment. On November 1, 2022, the defendant obtained a distribution quantity of fentanyl — over a kilogram in a single transaction. The brick that the defendant obtained weighed 1,130.4 grams. That equates to over 375,000 deadly doses of fentanyl.[1] As the Court is no doubt aware, fentanyl trafficking has led to numerous overdose deaths and injuries in recent years which have increased during the COVID-19 pandemic to unprecedented levels. *See, e.g.*, Abby Goodnough, "Overdose Deaths Have Surged During the Pandemic, C.D.C. Data Shows," N.Y. Times, https://nyti.ms/3pyYkyT (April 14, 2021). Drug overdoses nationwide soared to more than 93,000 in 2020 alone (one of the years that the defendant operated), a then-all-time high, jumping nearly 30% since 2019, with fentanyl continuing to drive the death toll. *See, e.g.,* Lenny Bernstein and Joel Achenbach, "Drug overdose deaths soared to a record 93,000 last year," Wash. Post., https://wapo.st/3xOX1zb (July 14, 2021). In New York City, there were 2,668 fatal overdoses in 2021, an increase of approximately 500 over the 2020 figure and 1,100 over the 2019 figure. *See, e.g.,* Joseph Goldstein and Joshua Needelman, "Fentanyl Helps Push Overdose Deaths to Record Level in New York City," N.Y. Times, https://www.nytimes.com/2023/01/13/nyregion/new-york-overdose-record.html (Jan. 13, 2023).

The defendant is no stranger to the dangerousness of drug trafficking. Nor is he a young man who made a rash decision out of desperation, ignorant of the possible consequences. Quite the opposite. He is a 55-year-old man who has served two significant prior terms of incarceration in connection with drug trafficking. The defendant was incarcerated for twelve years — from 1990 to 2002 — in connection with a narcotics trafficking charged in Maryland. From 2011 to 2020, he was again incarcerated, in connection with a heroin trafficking charge in the District of Maryland.

---

[1] The Drug Enforcement Administration estimates that 3 milligrams of fentanyl is a deadly dose for an average size adult.

While serving a term of supervised release in connection with his District of Maryland case, he committed the instant offense. Put simply, the substantial prison terms that the defendant has previously served have done little to deter him from reoffending.  A sentence within the Stipulated Guidelines Range is necessary to protect the public from the defendant's future crimes.

It bears noting that the defendant has demonstrated the ability to maintain legitimate employment. During a previous term of incarceration, the defendant obtained his GED. After his release from prison in 2020, he worked full time for a non-profit organization. Nevertheless, the defendant chose to once again entered into the drug trade.

As there is a need to deter the defendant from future crimes, so too is there a need for a serious sentence to promote general deterrence and respect for the law. Drug crimes are lucrative, and the number of individuals willing to engage in such crimes for even modest profit is, unfortunately, too high. An incarceratory sentence within the Stipulated Guidelines Range will send the message that the narcotics business is unacceptable and that purveyors of narcotics, especially repeat players like the defendant, will be punished appropriately.

## IV.    Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 87 to 108 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:  _Ashley C. Nicolas_
Ashley C. Nicolas
Assistant United States Attorney
(212) 637-3677

Cc:    Anthony L. Ricco, Esq. (via ECF)